May it please the Court and Counsel, my name is Brian Krikorian. I'll be arguing for the appellant. In our view, this case poses a classic example of parties using the criminal justice system to achieve a civil advantage. And our belief is in the lower court, all the elements and all the facts were present to meet all the elements that were addressed in the motions for summary judgment. And certainly there were ample, there is ample evidence presented that established disputed issues of fact that would have raised reasonable inferences to survive summary judgment. Addressing the elements which were proposed as part of the summary judgment, the first one that was challenged by defendants Muglers and Peterson was the issue of whether they instituted the criminal prosecution of our client. Now, under the standard of the law, all that is required is that the parties must, the plaintiff must prove that the defendants procured or in some way pressured the prosecutor to institute the criminal prosecution. What the defendants argued and what the lower court went along with was that, in reality, all we had to establish that they actually initiated, as in filing the prosecution, that the prosecutors filing it alone was not sufficient because the prosecutor files a criminal prosecution, therefore, a civil party can't procure the prosecution. In this case, that's, first of all, that's not the law. The law in Washington is that it just has to prove that the civil party either procured it or in some way pressured the prosecutor to file charges. In this case, we had an example of the defendants, certainly the ones who brought the motion on this element, not only asked, not just simply asking the prosecutor to file a charge. They prepared notebooks of all the evidence they contended supported the crime. They went to the civil court in Mason County and got a custodian put in place on Mrs. Mugler in order to create a custodianship that would fall within a particular crime. Once they did that, they then put a full court press on the Mason County prosecutors, who up to that time had been telling them, you don't have a crime. We can't charge this person with a crime. There is no custodian. There is no breach of the penal code. They then went to the prosecutors and began pressuring them to file a criminal charge, saying, now we've got a custodian. When the prosecutors came back and said, it's too tenuous, they then went further and got more evidence and more evidence until finally, at some point, the prosecutor said, okay, we'll file a charge. Certainly. Well, the prosecutor, I mean, let me just let's just focus on that issue. I would imagine any person can make a criminal referral. And it's not uncommon for some individual or company or federal agency to put together a package of information and serve it up to the prosecutor. The prosecutor still has to make an independent judgment about it. So what would be wrong here if they provided information? Well, first of all, the question is, they didn't just provide information. They provided information and continued to pressure the prosecutor. Even at one point, Prosecutor Burleson said that he felt Sue Mugger had threatened him if he didn't file a prosecution. The other issue is, once the prosecution was filed, they went back and the extradition was there was a problem with the extradition. They then went, the parties then began to assist the prosecutor in preparing the probable cause affidavit in August of 94. So in essence, it wasn't just, as Your Honor points out, making a referral or making a request. It was a constant barrage. In fact, at one point, Mrs. Peterson prepared research memos for the prosecutor telling him how she thought he could get around the problems with extradition. Now, certainly an argument, they are making the argument, well, we're just innocently giving this to the prosecutor. But the fact of the matter is, the evidence wasn't just them giving it to it. It was the colloquy going back and forth among the parties saying, they're throwing up obstacles at us. They're not helping us. You need to do more. Maybe you should call this person. Maybe we should get a special prosecutor who's not doing it. That in and of itself wasn't, it wasn't just up to the prosecutor. The other thing is, prosecutors testified they didn't make an independent investigation, that they relied completely on the information provided to them by these parties. There wasn't a police or a sheriff going out and making an investigation. There wasn't any other party out there who was providing a neutral buffer to them. They relied completely on the defendants in giving them this information. So I would contrast a simple referral with that. And certainly if you look at the case law, the cases don't require some, you know, governmental act on behalf of the civilian. Some of the cases involve just simply making a criminal complaint, signing a criminal complaint, and the courts have found that constitutes institution. Now, the case they cite, Stanfield, is clearly an opposite, because in that case, the prosecutor intended to prosecute Stanfield. It had made the decision. It went to the lab and asked the lab to do drug tests. The lab came back with tests and gave it to the prosecutor. The prosecutor then used those tests in his prosecution. The lab, the tests later proved to be faulty or inconclusive. When Stanfield sued the lab, the court found the lab never suggested or instigated a prosecution. The lab didn't even tell the prosecutor to go and prosecute it. They just provided information. So Stanfield is not applicable here, because in this case, they wanted this prosecution. There is no dispute that evidence establishes that the defendants wanted a prosecution to achieve their goal, which was to get Mary Muggler in their hands. They at – which gets us to the malice issue, but they wanted this civil goal. They wanted to stop our clients from carting Mary Muggler around, which they believe was endangering her. And they were told by the criminal authorities the only way they could do that was to essentially come up with a criminal means to do it. Now, turning to malice, again, the general law is malice is an issue for the trier of fact and is an issue for a jury. And certainly, there is plenty of evidence in the Court below that was presented that created an issue of fact. The Court found that there was – didn't find – found that probable cause would likely have survived summary judgment. And in our brief, we argued you can infer malice from a lack of probable cause. In addition to that, malice in a malicious prosecution action isn't just simply what we lay people believe is ill will. It can be one of many things. It can be not believing the plaintiff to be guilty, but still advocating prosecution of the plaintiff to achieve a goal. It can be – it can be ill will. It can be seeking a private advantage by trying to get the plaintiff arrested or prosecuted. It can be a reckless disregard for the plaintiff's rights, irrespective of your ill will. In this case, your evidence shows that the defendants knew the plaintiff likely was not guilty. They knew that he was not in the State of Washington when he took Mrs. Mugler. They knew there was evidence that suggested that there was no – Mrs. Mugler was not under no custodial guard, so she could go and come and go as she pleased. They found out at one point that the extradition warrant was – was invalid because plaintiff didn't create – didn't commit the crime in Washington, and therefore created a new affidavit in order to find a way to amend the probable cause affidavit to get a way to extradite him and bring him back to Washington. So clearly, they were aware of these facts. And I would go back to my original premises. The jury – the question is, can a jury have drawn reasonable inferences from these facts and concluded there was malice? And our position is the answer is an unequivocal yes. All that we need to show is that the evidence created issues of fact for a jury to decide, not a judge. And our concern is that the judge weighed this evidence and decided what – who was telling the truth, and that is not the province of the judge in the summary judgment. The other – the other point I was going to make on malice is also that when a party does not intend to bring the offender to justice, that also – Can I get back up for a minute? Sure. Did the judge get to the merits on this malicious prosecution, or did the judge say that it was time-barred? I can get to that. The judge first said it was time-barred, and then when we moved for reconsideration, Judge Rothstein said, well, I still think it's time-barred, but now I'm going to reach the merits on all these other issues. And is that, like, an alternative ground? That's a good question, Your Honor. I don't – I can only tell you procedurally what happened, is she granted summary judgment solely on the issue of the statute of limitations and did not reach any of the other substantive issues. When we moved for reconsideration just on that ground, she invited opposition, and then the defendants came back and said, well, even if you didn't – you overturned it on the statute of limitations, we had all these other reasons why summary judgment should be granted. I understand that, and then she writes on those. But if she's denied reconsideration, if she hasn't amended her statute of limitations ruling, wouldn't that be sufficient to sustain her judgment? Which wouldn't be? Pardon me? I didn't follow you, Your Honor. If in her second order she did not amend the first part, she just added some other things to it, then don't you have to show that she made a mistake on the statute of limitations? Yes, Your Honor, I think we would. Because we can affirm on – unless I'm missing something. If we affirm just on that ground, we don't have to reach the issues of instigation or malice or whatever. I would agree that if you found the statute of limitations was barred, then, yes, these other grounds are not necessary. Maybe it would be useful if you could address the statute of limitations at some point. Sure, Your Honor. Statute of limitations issue is raised primarily by the court and the defendants and the court extracting one word from the elements of the tort and malicious prosecution, and that one word is abandonment. What the court did is – what the defendants argued was, well, the element says, in order to prove a malicious prosecution action, you need to show that the action, the underlying criminal action was either terminated or abandoned. And they said, well, look, it was abandoned because no one did anything for two or three years. The argument we made to the court was you can't just have an ephemeral or nebulous abandonment. There has to be some act which constitutes abandonment. And clearly what the defense have done is create a law from whole cloth. There is no law in the State of Washington that says some nebulous form, subjective form of abandonment is there. Well, when the extradition was quashed or whatever happened that terminated that process, wasn't that an event from which time could run? Well, certainly that's the argument. But if you look at the Cowan case, in Cowan there was an instance where the extradition occurred in Missouri, and the action, I believe, was filed in Oklahoma. And the court in Missouri quashed the extradition writ. And then the plaintiff, the defendant there, sued for malicious prosecution, arguing that the mere act of Missouri quashing the extradition writ constituted a formal termination. And the court in Cowan stated, no, because in Oklahoma, I think it was either Kansas or Oklahoma, the prosecution is still ongoing and you acknowledge that if you went back to Oklahoma or Kansas, you would be arrested until the State that has charged you makes an act that terminates the prosecution in your favor. It is still not a favorable termination. What is your theory of the outside date that you had time in which to file? Our theory is the outside date is the date of dismissal, which would be, I think it was January of 2000, when the prosecutor moved to dismiss the case and the court dismissed it. The prosecutor testified that he didn't form the intent to abandon the prosecution until November of 99, after he was advised by an attorney of the Coffey's that a number of things, including that Mrs. Mugler died. It wasn't just Mrs. Mugler died. It was, here's the flaws, plus, by the way, Mrs. Mugler died. The prosecutor, Mr. Shewitz, testified that once he received that information, he first confirmed it with Defendant Clovey Smith, and then he conferred with the Chief Prosecutor Burleson, and then they concluded that, okay, let's terminate the prosecution and dismiss. Under the lower court's reasoning, it was really when Mrs. Mugler died, which was sometime in 97. The problem with that is there is a letter which they have included as part of the same time Mrs. Mugler died saying the prosecution remains pending. So clearly, if you were to go by the lower court's logic, you would have a plaintiff guessing when the statute of limitations runs because she's concluded that when Mrs. Mugler died, poof, the statute of limitations, there is some kind of abandonment occurred because ultimately the prosecutor concluded because Mrs. Mugler is dead, I may have difficulty in proving the case. The irony in that is that the prosecutor never relied on Mrs. Mugler to institute the charges. They relied completely on the defendants. Kennedy. Counsel, you've just got five minutes left. If you wanted it for rebuttal, you may prefer to answer Judge Goodwin in more detail than that. I don't need any more detail. Okay. I got your point on it. Okay. I'll reserve for rebuttal. All right. Very good, sir. Thank you. Okay. Now, you are? Good morning, Your Honors. I'm Steve Rockey. I represent Defendant Keith Clovey Smith and Keith Clovey Smith, Incorporated. He was a guardian ad litem, as you know. The defense counsel for the other two defendants are here. We have agreed to allocate time in a somewhat informal method. You have to watch it yourself. I will. And I'm intending to take approximately ten minutes because I'm going to handle some of the common issues in addition to some of the individual. You plan to take half the time and then your colleagues will take the rest. That's correct, Your Honor. Thank you. Okay. District Court Judge Rothstein hit the nail on the head with this case when she stated in her order from April last year that the Superior Court in Mason County faced a clearly unusual situation in which it deemed the expansion of the guardian ad litem's powers necessary so that he could fulfill the functions that compelled his appointment in the first place. And that in particular necessitated him finding Mrs. Muggler. And a note of these powers that were granted to the guardian ad litem were temporary until Mrs. Muggler was found. It was an unusual situation for the Mason County Superior Court. And at the main hearing on September 26, 1994, it is worth noting what the evidence before that court was, a statement was presented by Sally York, the older sister of the plaintiff, arguing against any expansion of the guardian ad litem's powers. And in her statement, Ms. York said or admitted that Mrs. Muggler had left the state with her brother, the plaintiff, and also Ms. York's mother, and gone underground because they knew of the guardianship action. She also made comments indicating that it was the plaintiff, Walter Coffey, and not her mother, Mary Ann Coffey, who was the moving force behind this. And as noted, she was opposing the motion to expand the guardian ad litem's powers. Superior Court Judge Sheldon said that her primary concern was the safety and location of Mary Muggler, Mrs. Muggler, an individual who was 86 years old at that time, and that she was admitted that Mrs. Muggler was in flight and that she had grave concerns about the physical condition and safety of Mrs. Muggler. And she went on to sign the order finding incapacity of Mrs. Muggler and expanding the role of the guardian ad litem to take various steps, in particular to find Mrs. Muggler, to place her in a safe and secure environment, and then come back to the court for further direction. And also stating in her order that criminal complaints were authorized against the plaintiff and also Mary Ann Coffey. That was the situation facing the Superior Court at that time. One and a half years went by after that before the Muggler defendants, who were the sons of Mrs. Muggler, or the guardian ad litem, were able to have any contact with Mary Muggler. And that occurred only because Mary Ann Coffey, when she sensed the legal pressure on her getting too great, filed a guardianship action in the state of Illinois. And once that began, seeking to have herself appointed as the guardian in a defensive measure. As it turned out, the courts in Illinois took custody away from Mary Ann Coffey, did not name her the guardian, appointed Mr. Reichardt as guardian, and ultimately approved his recommendation that Mary Muggler return to her home in New York, where her oldest son, Richard Muggler, became her guardian until she died a couple of years later. That's what faced the court at that time, Your Honor. I would like to turn my attention to a question you asked about the grounds for summary judgment. There are clearly alternative grounds here. District Court Judge Rothstein granted summary judgment at first on a ground common to all defendants. I see explicitly in the order, second order on page 8, says as the court does not find reconsideration of the statute of limitations argument appropriate here, it maintains its prior position on this issue and then goes on to make some other points. That's correct. So the limitations issue is still part of her ruling, right? That is correct. And there's two facets to consider here. She ruled on it on the merits of the statute of limitations issue, and that was in her March order. She further observed in her April 2002 order that one of the reasons she was denying reconsideration was because the plaintiff was making new arguments that he had been aware of the defendant's arguments that the conduct of the prosecutors or the lack of conduct, we should say, showed abandonment, but had not addressed those arguments. Instead, the argument of the plaintiff at that time was simply that abandonment in the law meant a formal piece of paper, essentially the same as a dismissal order. On the reconsideration motion, the plaintiff made new arguments that the conduct of the prosecutors did not amount to abandonment. She apparently didn't agree with those arguments, but noted they were new and she didn't have to consider them either. And I might note the standard of review from that denial of reconsideration is an abuse of discretion standard on it. I would like to turn to the other grounds that have been argued by the defendants for sustaining the summary judgment below. Let me ask you just one more thing on abandonment. She has a footnote on this limitations on abandonment where she says, in addition to the facts in the initial order giving summary judgment, the court notes that Coffey demonstrated awareness as to abandonment of criminal charges when he made some certification to an Illinois court, that there were no criminal charges pending against him as of January 1998. So is that significant on this issue? Well, it is, Your Honor. There's a document he signed. It's an affidavit from January 1998 seeking expungement of the charges in Illinois or the record in Cook County. And as part of that affidavit, he had to certify there were no criminal charges pending against him at that time. And that's almost exactly to the day, three years before the filing of this lawsuit. He later argued that there were criminal charges pending against him in the State of Washington up until the dismissal order in January of the year 2000. And I might add that he, his testimony clearly establishes he was completely unaware of the dismissal in January 2000. He didn't find out until some date afterward. The attorney who wrote to the prosecutor was an attorney for his mother. We pointed out to the court that he had, in his own mind, a belief on January 2019, excuse me, January 19, I believe, 1998, that there were no criminal charges pending against him. And that's what Judge Rothstein is making note of in that footnote. And is that a certification there are no criminal charges pending against him anywhere or just in? Well, you've hit on the issue. We interpreted it that way, and that's clearly how the document reads and stated that in our opening papers. He didn't respond in their opposition to that point. But on reconsideration, Mr. Coffey made the point that he believed in signing that affidavit that pertained only to Illinois. All right. So then on summary judgment, then, do we have to accept his statement on it? You do, Your Honor, except I would point out, again, this was an argument not made in the initial papers of post-summary judgment despite the non-notice of the issues. So then it's an abuse of discretion issue whether or how do you deal with it? That's correct, Your Honor. That's correct. I would, in the time remaining, like to turn to some of the other issues here, Your Honor. First of all, the plaintiff in the oral argument did not address immunity issues. I would like to briefly touch on that, Your Honors. We have an unbroken line of cases in Washington, and this is a state law issue, that appointees of courts, including guardian ad litems, have quasi-judicial immunity and have a very broad sweep because they fulfill the functions that the judge themselves have to undertake in the case. In particular, in family law, we know that unusual and wide-ranging functions have to be performed by judges. And I want to mention two cases in particular. The Barr case, of course, from 1994, which is discussed at length in both briefs, specifically rejected the idea of trying to parse the guardian ad litems duties into those that were an advocate's type of role and those that were a surrogate's type of role. The plaintiff would like to do that here. The Barr court noted the policy implications of doing that, that liability would the idea of protecting court appointees in their investigations would be hurt. And that's a Washington State Supreme Court case. In the Reddy v. Carr case that came later, addressing a family court investigator on custody issues, who had apparently erred in wrongfully recommending custody as things turned out. But nevertheless, she had immunity. And the court went through all the tests of are we performing functions of judges and noted that in the family law area, as we have here in the guardianship case, those functions are extensive to conduct investigations and protect the best interests of the individuals who are at issue. And it went on to note both the policy implications, if there were not immunity, which would be very serious in impairing the independence of the guardian ad litem or family court investigators. And lastly, addressed the fact that it's not as if any aggrieved person is without a family court investigator serves at the pleasure of the judge that appoints him or her. And there always is the ability to go back to that judge and seek remedies, including the removal of the guardian ad litem or other remedies at that time. Clearly, Mr. Coffey had those remedies here if he was aggrieved. There are no cases at all in Washington that support the plaintiff's view here. And I know that they have cited to the Lutheran daycare case. If you read that case carefully, it does not support their point of view. It arose out of the executive branch of government, out of administrative decisions. They were dealing with a statute that abrogated immunity for a county or an agency in the area of land use if they acted arbitrarily and capriciously. And the courts ---- That's ten minutes. I don't mean to interrupt you in mid-sentence, but if your other counsel want their time, you're going to have to conclude. I will yield to them so they can take up their allotted time. Thank you. Okay. Go ahead. Well, if I may, again, on the Lutheran daycare case, the Court specifically noted how the considerations there were different in that executive branch or administrative area than they were for judges or judicial appointees. That appears throughout the opinion. And it also is worth noting there that the issue of individual immunity was not before the Court. It acknowledged that all parties were agreed that even in that particular case, the individuals who were defendants had immunity. So the case doesn't apply anyway. And, of course, the Reddy case and the Barr case, which came later, but the Reddy v. Carr case in particular, went through the factors in Lutheran daycare in a family law setting for a judicial appointee, a family law investigator, and found that there was immunity. Thank you. Okay. Thank you very much, sir. All right. Who's next? Is that Mr. Hale? Yes, Your Honor. May it please the Court, my name is Jeff Hale, counsel. We represent the mugglers in this matter, the late Fred Muggler and Richard and Suzanne Muggler. We are asking the Court to affirm the lower court's order granting summary judgment and the motion and denying the motion for reconsideration. The Muggler's direct contact with the prosecuting attorney consists of four letters, one of which was written by Fred Muggler after the amended information. The Mugglers did not institute the prosecution of Mr. Coppi. I think the Court alluded to the fact when you look at the Stansfield case, you look at McCord, one of the criteria is did they prevent the intelligent exercise of the prosecutor's discretion, and they did not. It's unrebutted by Mr. Silverman's declaration. You also have declarations from Mr. Burleson, the prosecutor, as well as Mr. Burleson. The Mugglers did not have prosecutorial powers, nor did they have the ability to force the pursuit of any or a certain course of action in this matter. I believe Judge Rostein correctly ruled when she sided the Banks case that the prosecutor had the ability to judge the propriety of proceeding and acted on their own initiative. Secondly, the Mugglers or any of the defendants acted with any authority. They did not have any malice in this matter. They did not. The plaintiff, when they alleged malice, indicated there are five different grounds, two of which they really alleged, one of which not believing the plaintiff to be guilty and the other one talking about a personal advantage. But when you look at page 32 of the appellant's brief, they omit the words over him when they cite the cases of Peasley, Peterson, Odoms, and as the Court, Judge Rostein indicated, indicated in her decision the Mugglers were not acting to gain any personal advantage over Mr. Coffey. Mr. Coffey indicated at all times he had no interest and the Court indicated he vehemently denies having any personal interest in the married Muggler estate in this matter. And the Court, and we've talked about briefly the statute of limitations. The Court, all the defendants argued initially that you not only have a termination on the merits, but there also can be an abandonment in this matter. And even when counsel or court plaintiffs, when they talk about their brief, and I think it's pages 16 and 46, they still continue to omit termination on the merits or abandonment. And as the Court indicated, conduct evidencing abandonment can satisfy the claim that there can be a barring of the statute of limitations. There are two separate events that all defendants argue indicated that there would be a barring of the statute of limitations. One, after June 25, 1996, when the extradition was barred, there was no further activity by the Mason County Prosecuting Attorney in this matter. Secondly, married Muggler died on October 6, 1997. It is correct. The prosecutor did not learn about this until 1999. But he indicated once he learned about it, it would be impractical to proceed. Now, I did cite a secondary. The destruction of evidence isn't ordinarily considered a beginning date for the statute to run on a private cause of action for wrongful prosecution or something. The fact that some evidence is lost is just the fact that they have to think about it in a strategy, planning what they're going to do. But that has nothing to do with the statute of limitations. Well, in that broad sense, yes, here we're talking about the law. You don't want us to write an opinion saying that if somebody dies in the course of litigation that the statute starts to run. But you have to look at the fact that in the statement, the natural course of this, whether it becomes improbable or impossible. Here you have a prosecuting attorney indicating that it was impractical to proceed at that time. I mean, what's the depth? I understand what the court did. There are all kinds of other facts from which you can claim abandonment and so on. Certainly. The death of a possible witness would be a reach that I don't know how anybody could seriously. Well, we're saying that's the outside limit as far as the October 6th. There's nothing that's happening from June 25th of 96, as far as any activity on the part of the prosecuting attorney in this matter. Let's say at the outside, we have the other incident. And there is, of course, the and was alluded to the the plaintiff signing. We may not have to unravel the statute. Well, anyway, if there if the if you prevail on the other points, assuming that the that the guardian ad litem has some kind of judicial immunity. What what is the grounds for immunity of the of the other interested parties? The defendants? Well, the council will be able to argue with regards to the attorney attorney. I'm going to have a few minutes here. Well, maybe I'll turn it over to Mr. Fisser to talk about. You can yield any time you wish. I certainly interested in hearing about that. With regards to the immunity. It was a matter that as far as the court's decision has to muggler, they did not reach that. But I feel that we would fall within the same guidelines as Mr. Fisser will talk about with regards to the attorney. Thank you very much. Thank you very much, Mr. Hale. Now we'll hear from Mr. Fisser. Yes. Good morning, Your Honors. Counsel, may it please the court. I'm Steve Fisser, and I represent Eileen Peterson and her law firm, Gordon Thomas Honeywell. There's a strong public policy for immunity, which can be found in three separate areas, Your Honor, to answer your question. First of all, someone like the guardian ad litem can have judicial or quasi judicial immunity. Second of all, there's a statutory immunity under 424-500. That's the one thing we think Judge Rothstein should have added to the armamentarium, primarily for two reasons. It's a reinforcement of the public policy argument. It's an acknowledgment that we now have a specific immunity in RCW 7934 for abusing vulnerable adults. And finally, and most practically, it gives us attorney's fees so that the Walter Coffees of the world cannot lose the battle but win the war by making those who are immune spend considerable time and resources. In addition to that, we have a long line of Washington cases that indicate that the purpose of an advocate such as Ms. Peterson is to represent her clients appropriately, and particularly when it has the benefit to potential third parties. Our Supreme Court has said those advocacy decisions are to be very, very, very carefully limited in terms of exposure to the attorney. And in fact, there's a generalized public policy immunity for lawyers who do their job and do it the right way. And this is simply one of those cases. And Judge Rothstein had a great decision. Well, that gets into sort of fact questions, though, doesn't it, about whether they're doing it the right way. I mean, if you got a big civil case going and you decide you can put a little cork in your bat by getting a criminal case going, that might raise some fact questions. Well, first of all, Ms. Peterson didn't put any cork in the bat. She doesn't have a bat. The prosecutor has it. Second of all, even if she tried that, it's not a factual question. This court deals all the time with immunities and qualified immunities, for example, in civil rights cases. You know, I'm a little out of my area, but it's my understanding those are decided as a matter of law. And in fact, my understanding is the state of the law is that they're typically decided early on so that the parties don't have to put up with the cost, expense, and delay of having it resolved later. I guess in short, I'm glad to hear that Mr. Coffey, for the first time through his attorney today, admits that he, quote, took Mary Mugler and carted her around the country. Had he not done so, I don't think any of the people at this side of the courtroom would have been put in the position they were in, and I don't think that they should be penalized in any way for doing the right thing. Does anyone else have anything? Mr. Fitzgerald, I know your colleagues used up a share of what might have been your time. If you want another minute or two, we'll let you have it, and we'll add that time, some additional time for Mr. Coffey as well. That's gracious, Your Honor. But you're busy, and unless somebody on the bench has a specific question, you understand our point of view. Does Judge Lay or Judge Goodwin have an inquiry? Hearing none, we'll take up your arguments. Thank you. Thank you for your consideration. Thank you, sir. Now, Mr. Krikorian, you've wisely saved some time for rebuttal. I was asked to offer for the extra minute. It's still on the table. Since they're digging up on you three to one, we might out of sympathy give you a minute if you need it. Actually, I had about four and a half minutes. Well, before you get started on rebuttal, I didn't ask earlier because we didn't we were running short of time. But do you. Is there anything in the record that any false information was given to the prosecutor to get the prosecutor to start this prosecution? There was you know, it's there was a wealth of information. Nuanced information, but false information. You better start running the clock. Your Honor, Eric Krikorian, also very appellant to Walter Coffey. Yes. There was a wealth. It's in. There were several letters presented to the exhibit numbers. Letters that particularly Peterson. You don't want to go looking for a needle in a haystack. If you know where the needle is, give us the page number. All right. May I allow him to proceed with the argument and I'll search for the. Thank you. You can provide it to the clerk after. OK. Give a copy of whatever you provide to the defendant. OK. Addressing the arguments. Let's let me start with the statute of limitations issue. The judge just couldn't reference. There were several reference points. The only reference points ever as to what the statute of limitations accrued on other than the actual dismissal date was either the date of extradition, which I which I addressed earlier. This is beyond the statute. That was what I was. That would be one running date that they would be barred. Yes. If you assume that extradition in Illinois, even though the prosecution remained pending in Washington, constituted a favorable termination. And the problem with that argument, other than the Cowan case, is also that you could bring a malicious prosecution action and Washington still prosecute and find him guilty. So there would be an inconsistent finding there. The other issue is this signature of Mr. Coffey on this expungement in Illinois, which said he was aware of no prosecutions. He testified that his attorney said this applied to all Illinois cases. I would argue that it's an issue of fact of whether or not that that alone creates a bar gate. And even then, we still have the issue. Is that an affidavit? I think it was under penalty of perjury. If it was, wouldn't that — wouldn't there be a stopple of collateral or issue preclusion on it? Well, the problem with that is just because it's in — I could tell you that I think I'm going to win the lotto tomorrow. But that doesn't mean it will happen. And just because he believed, even if let's assume that's true, he believed there was no pending prosecution, which he says is not true, the fact that there is a pending prosecution doesn't necessarily mean there was a favorable termination. And I think that gets back to our original point, is that what they're doing is picking at word. In the law, when you have what's constituted an abandonment, if you look at the restatement, abandonments generally occur where a judicial or magistrate act creates a — some form of dismissal or expungement or quashing of an — of a State-issued writ. And the prosecutor thereafter says, I'm not going to go further with this. There is still an act done by the charging court that creates the termination, not by another court, by the charging court. In this case, there was no such act. Are you saying that there can't be abandonment just from some inaction of the charging court? No, because what would happen if their new prosecutor comes in and says, you know something? This has been sitting around for two years. I'm going to go ahead and prosecute it. And I think, Your Honor, I could just point to general facts. There are countless examples of people who flew the expedition, the Einhorn case. The man fled to Europe, and the prosecution was active for 20 years. Just because the prosecutor chooses not to proceed doesn't necessarily mean he's abandonment. We would then have to go — the plaintiff literally would have to go into the mind of the prosecutor, guess if he's abandonment, in order to file it. And I think, Your Honor, I could just point to general facts.   And I think, Your Honor, I could just point to general facts. Before the dismissal by the Mason County Superior Court, the same defendants would have been in the court saying, there's no favorable termination. You don't have a court coming out and saying, he has a favorable termination. The other point I'd like to raise on the termination issue is the law generally is you need to — for there to be a termination or abandonment, the prosecutor has to reinstate the charges. In this case, that wasn't the case. The prosecutor would have had the charges already on the books and just continued to prosecute it. I'm running out of time, so I would like to quickly, if I could, just have a minute to do the immunity issue that's been raised. We'll give you one grace minute. Thank you. The — with respect to the guardian ad litem, I think we've adequately briefed it. I just want to note that the distinction we make is that what Clovey Smith was doing was not acting as a guardian ad litem. In the Barr v. Gage case, it's very clear that what is granted immunity is acts that are constituting reporting to the court and investment in the court. What Clovey Smith did was act as a guardian and go to seek these charges instituted. As far as the attorneys are concerned, there is no law in the State of Washington that provides attorneys per se immunity because they are attorneys. And the issue of the statute, again, if the statute, the reporting statute, which is generally a privilege, a litigation privilege statute, if that were extended to malicious prosecutions, there would be no malicious prosecution actions, because every time you reported something to the authorities, it would be deemed a reporting under that statute, and no cases in Washington or elsewhere have extended the statute to malicious prosecutions. Thank you, Your Honor. Thank you very much. I appreciate your argument, Mr. Krikorian. I appreciate the argument of the counsel. If the public can get their supplemental documentation, I ask for it. Right. Before we submit the case for decision, we'll permit the appellant to provide those citations to the clerk. The clerk might get them. Yes, but give copies to the defendants. And we won't act on the case for a little while. So if they have something to countersite, they can do it. Can I do it by letter? Well, we can permit them to do it by letter. Cite the letter. That's fine. Copies to counsel. Copies to all counsel, and we'll permit counsel. We'll give you a letter within the week and then a response with countersites within three days, let's say. We won't decide the case before then. Thank you, Your Honor. It's a complex case, and we appreciate the efforts of all counsel. Thank you. Thank you very much. The case is submitted.
judges: Lay , Goodwin, Gould